UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VICTOR PHILEMON, individually and on behalf
of all persons similarly situated,

Plaintiff,

-against-

ARIES CAPITAL PARTNERS, INC.; MATTHEW
BLAKE; SCOTT SHARINN; and AMANDA
MORENO,

Defendants.

No. 18-cv-1927

**CLASS ACTION
COMPLAINT**

**DEMAND FOR JURY TRIAL**

## PRELIMINARY STATEMENT

1.    Plaintiff and the putative class members are former students of the Technical Career Institutes ("TCI"), a now-defunct for-profit college. Plaintiff brings this class action on behalf of more than two hundred former TCI students who have been subject to Defendants' unlawful consumer debt litigation scheme, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA") and New York Judiciary Law § 487.

2.    This scheme was devised and executed by Defendants Aries Capital Partners, Inc. ("Aries"), a debt buyer; Matthew Blake ("Blake"), the President of Aries; and attorneys Scott Sharinn ("Sharinn") and Amanda Moreno ("Moreno," and together with Sharinn, the "Attorney Defendants").

1

3.      In 2014, Aries purchased a set of student accounts from TCI. Each student account purportedly had a past-due balance of tuition and fees incurred as a result of the student's attendance at TCI, stemming from as early as 2007.

4.      In 2017, Defendants sued 211 former TCI students ("the Students") in New York City Civil Court to collect on these accounts.

5.      Defendants filed these 211 lawsuits ("the Lawsuits") without the facts necessary to prove the only claim asserted, account stated. Specifically, Defendants did not have, and did not have the ability to obtain, any documentation showing whether TCI had ever sent a bill or invoice to the Students for the alleged account balances or whether the Students had disputed the balances with TCI.

6.      The Attorney Defendants did not meaningfully review the facts underlying the alleged indebtedness or the litigation documents they filed.

7.      Defendants filed many of the Lawsuits outside of the statute of limitations; sought unauthorized attorneys' fees; and disclosed the Students' confidential personal information, including un-redacted social security numbers, in the public court files.

8.      Defendants intentionally retained process servers known to engage in sewer service. As a result, 96% of Students did not appear in court to defend the Lawsuits.

9.      On the basis of false sworn statements, Defendants sought default judgments, which would allow them to garnish the Students' wages and levy their bank accounts.

10.     Through their illegal collection efforts, Defendants already have extracted thousands of dollars from the Students and threaten to extract many more thousands of dollars that Defendants have not, and could not, prove are owed by the Students.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over Plaintiffs' federal claim pursuant to 28 U.S.C.

§ 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claim

pursuant to 28 U.S.C. § 1367(a).  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201(a)

and 2202.

12.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391

because it is the district in which one or more Defendants resides and where a substantial part of

the events giving rise to Plaintiff's claims occurred—namely, it is the district in which

Defendants filed and litigated a lawsuit against Plaintiff.

## PARTIES

13.    Plaintiff Victor Philemon is a natural person residing in Brooklyn, New York.

14.    Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C.

§ 1692a(3), in that Plaintiff was alleged to owe money to Aries stemming from Plaintiff's

attendance at TCI.

15.    Defendant Aries is a domestic business corporation organized under the laws of

the State of New York with its principal place of business located at 243 Route 100, Somers, NY

10589. Aries is registered as a debt collection agency with the New York City Department of

Consumer Affairs, with license number 1219885-DCA.

16.    Aries is a debt buyer: a company that purchases debt from the original creditor at

a reduced rate and then attempts to collect on the debt for profit.

17.    Defendant Matthew Blake is a natural person. On information and belief, Blake

resides in Connecticut. Blake is the President of Aries. On information and belief, Blake is a

partial or whole owner of Aries.

18.    In addition to his role at Aries, Blake is the managing agent of four other debt collection agencies licensed by the New York City Department of Consumer Affairs and the president of one such agency. He is also a director of Houslanger & Associates, PLLC, a debt collection law firm.

19.    Defendant Scott Sharinn is a natural person residing in Queens, New York. Sharinn is a member of the New York Bar. Sharinn is a debt collection attorney and a member and board member of the trade association for debt collection attorneys, the National Creditors Bar Association.

20.    Defendant Amanda Moreno is a natural person. On information and belief, Moreno resides in Nassau County, New York. Moreno is a member of the New York Bar and was a debt collection attorney when engaging in the conduct described in this complaint.

21.    The Attorney Defendants engaged in the activity described in this complaint while employed as debt collection attorneys at Sharinn & Lipshie P.C., a debt collection law firm that operates the website www.collectthedebt.com.

22.    Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that Defendants regularly use the instrumentalities of interstate commerce in their businesses, the principal purpose of which is the collection of debts, and are engaged in the business of collecting consumer debts via various means, including civil debt collection lawsuits.

**FACTUAL ALLEGATIONS**

***TCI College***

23.    TCI was a for-profit college that offered Associate's Degrees in technology-related fields such as Automotive Technology and Heating Ventilation Air Conditioning and Refrigeration. TCI permanently closed on September 1, 2017.

24.     Until it closed, TCI operated in Midtown Manhattan, at 320 West 31st Street, New York, NY 10001 and 940 8th Avenue, New York, NY 10019.

25.     TCI's students were predominately low-income. Over 80% of TCI students received Federal Pell Grants, which are available only to low-income students.

26.     The graduation rate at TCI was below 25%.

27.     In 2015, the New York City Department of Consumer Affairs conducted an investigation into TCI's high drop-out and poor loan repayment rates.

28.     The United States Department of Education found that TCI made improper payments in order to artificially lower the percentage of its former students that defaulted on their federal student loans, a metric that is reported to the federal government.

29.     TCI charged its students tuition and various fees, such as a matriculation fee, software licensing fee, student activity fee, and technology fee. TCI tuition and fees for each semester were due on or before a student's first day of classes.

***Receivable Purchase Agreement Between TCI and Aries***

30.     On December 5, 2014, Aries entered into a Receivable Purchase Agreement with TCI. Through this Agreement, Aries purchased a set of TCI student accounts designated as having outstanding balances.

31.     On information and belief, in connection with the Receivable Purchase Agreement, Aries obtained from TCI "Ledger Card" computer printouts for the accounts it purchased.

32.     The Ledger Card purports to show each credit and debit made on the Student's TCI account and the total account balance. The Ledger Card also shows the Student's name,

address, ID number, enrollment status, program of enrollment, start date at TCI, and last date of enrollment at TCI. The Ledger Cards obtained by Aries were printed in 2011 and 2012.

33.     The Ledger Card printouts obtained by Aries did not reflect any debits or credits to the account later than 2012.

34.     The Ledger Cards do not show whether any bills or invoices from TCI were ever sent to the Students or whether the Students ever disputed any charges with TCI.

35.     On information and belief, in connection with the Receivable Purchase Agreement, Aries also obtained from TCI a "StudentMaster" record for some or all of the accounts it purchased. The StudentMaster record shows detailed demographic information about the Student, including: name, address, phone number, email address, marital status, social security number, date of birth, ethnicity, and citizenship status. The StudentMaster record also shows the Student's ID number, enrollment status, program of enrollment, start date at TCI, and last date of enrollment at TCI.

36.     The StudentMaster records do not show whether any bills or invoices from TCI were ever sent to the Students or whether the Students ever disputed any charges with TCI.

37.     On information and belief, Aries did not obtain any documentation from TCI that shows whether any bills or invoices from TCI were ever sent to the Students or whether the Students ever disputed any charges with TCI.

### *Defendants' State Court Lawsuits*

38.     In 2017, Defendants began to collect on the purchased TCI accounts through litigation. Specifically, Aries sued former TCI students in New York City Civil Court in an effort to secure enforceable judgments or favorable settlements. Aries retained the Attorney Defendants to commence the Lawsuits on Aries's behalf.

39.     The New York State eCourts system shows that, in 2017, Aries commenced 211 lawsuits in New York City Civil Courts "as assignee of Technical Career Institutes, Inc."

40.     When litigating on behalf of Aries, the Attorney Defendants have taken all actions at the direction of Aries.

41.     The Attorney Defendants did not meaningfully review the facts underlying the alleged indebtedness or the summons, complaint, and attachments before filing each of the Lawsuits on behalf of Aries. Specifically, the Attorney Defendants did not review:

    a)  whether the statute of limitations had expired in the action;

    b)  whether there was a verifiable basis for each claim, including whether any bill or invoice had ever been sent to the Student and whether the Student had ever disputed any account charges;

    c)  whether attorneys' fees could be collected in the action; and

    d)  whether the Student's confidential personal information was improperly disclosed in the proposed pleadings.

42.     Defendants initiated each of the Lawsuits by filing a summons and complaint. On information and belief, the Attorney Defendants used a standard form to prepare the summonses and complaints.

43.     The summons and complaint filed in each case is virtually identical to those filed in every other case, with the only differences being the identifying details of each Student (for example, the Student's name and alleged amount of debt owed), and certain dates.

44.     Each summons and complaint was signed by one of the Attorney Defendants above a pre-printed signature line stating "Amanda Moreno /Scott C Sharinn" or "Scott C Sharinn Esq, /Amanda Moreno , Esq."

45.     The New York State Courts' Administrative Rules require that each paper submitted to the court contain an attorney's signature as representation of the attorney's

7

certification that "to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the paper or the contentions therein are not frivolous." 22 N.Y.C.R.R. § 130-1.01a(b).

46.     Each summons directed the individual sued to appear in court and file an answer to the complaint. Each summons further stated that if he or she failed to answer the complaint, judgment would be entered in the amount sought in the complaint, plus interest at 9%, costs, and attorneys' fees of $250.00.

47.     There is no legal basis for Defendants to collect attorneys' fees in these actions.

48.     Each complaint alleged a single claim, for account stated. Under New York law, an account stated claim has three elements: (1) a bill or invoice was presented to the debtor by the creditor; (2) the debtor accepted the bill or invoice as correct (i.e., did not dispute it); and (3) the debtor promised to pay the creditor the amount stated as due on the bill or invoice.

49.     Under New York law, the statute of limitations for an account stated claim is six years.

50.     Each complaint acknowledged that the "statute of limitations for the claim is six years" and stated that "[a]fter a reasonable inquiry [Aries] has reason to believe that the statute of limitations has not expired in the State of New York where the cause of action accrued."

51.     On information and belief, this statement is false. Defendants did not conduct any reasonable inquiry into whether the statute of limitations had expired before filing the complaints.

52.     Defendants filed many of the Lawsuits after the statute of limitations had expired.

53.     In many cases, it was plain on the face of the complaint and its attachments that the statute of limitations had expired.

54.     On information and belief, Defendants did not have any way to obtain, and did not review, any documents stating whether TCI sent bills or invoices to the Students or whether the Students disputed any charges with TCI.

55.     On information and belief, Defendants knew at the time they filed each complaint that they lacked and would lack admissible evidence sufficient to prove their only claim, for account stated.

56.     Defendants filed as Exhibit A to each complaint an "Assignment and Bill of Sale," which is a document dated December 4, 2014, signed by Thomas J. Bickart, CFO of TCI. In the document, Bickart, attested that TCI had entered into a Receivable Purchase Agreement with Aries on December 5, 2014—the day *after* Bickart purportedly signed this document.

57.     Defendants filed as Exhibit B to each complaint the Student's Ledger Card.

58.     In many cases, Defendants filed additional attachments to the complaint, such as the StudentMaster record, that contained un-redacted confidential personal information, including name, home address, date of birth, and full social security number.

59.     On information and belief, Defendants never effected lawful service of the summons and complaint on most, if not all, of the Students.

60.     On information and belief, Defendants hired process servers Benjamin Lamb and Osmond Tinglin to serve the majority of the Students in these cases.

61.     On information and belief, Defendants knew that Lamb and Tinglin engaged in "sewer service": the practice of filing a fraudulent affidavit of service swearing that service has been made, when in fact service has not been made. The following public information was available to Defendants regarding Lamb and Tinglin's sewer service practices:

   a)  In 2012, the New York City Department of Consumer Affairs (DCA) brought an enforcement action against Lamb for failure to comply with legal requirements

and, on September 13, 2012, Lamb entered into a consent order with the DCA and agreed to pay a $500 fine with respect to his violations.

b) Lamb was a defendant in the highly-publicized sewer service lawsuit *Sykes v. Mel Harris*, No. 09-cv-8486 (S.D.N.Y.).

c) In 2011, DCA brought an enforcement action against Tinglin for failure to comply with legal requirements and, on July 11, 2011, Tinglin entered into an assurance of discontinuance with the DCA and agreed to pay a $1000 fine with respect to his violations.

d) On October 21, 2013, the DCA brought another enforcement action against Tinglin for numerous violations and, on March 25, 2014, Tinglin entered into a consent order with the DCA and agreed to pay a $1500 fine with respect to these violations.

62.   On information and belief, Defendants hired Lamb, Tinglin, and other process servers specifically to engage in sewer service.

63.   Defendants filed affidavits of service in the Lawsuits notwithstanding that they contained many indications that they were falsified, such as:

a) The majority of affidavits of service purport to have made service at the same address listed on the Student's Ledger Card. On information and belief, the address on the Student's Ledger Card is the address where he or she resided when attending TCI, generally between five and ten years prior to the date of service.

b) The large majority of the affidavits of service allege substitute service, meaning in-hand delivery of the summons and complaint to a person of suitable age and discretion at the actual residence or actual place of business of the person who was sued, with an additional follow-up mailing. This indicates that an adult other than the person who was sued answered the door and accepted service.

c) The large majority of substitute service affidavits of service identify the person served as having the first name "John" or "Jane" and the last name of the Student, or the last name of "Doe," supposedly indicating that the large majority of individuals served refuse to give their name.

d) The affidavits show instances in which the same process server executed service on multiple Students on the same day, often just minutes apart. For example, Lamb purported to serve two Students just eight minutes apart and Tinglin purported to serve two Students just fifteen minutes apart. One day, Tinglin purported to have served a Student at 1:36p.m. and then attempted to serve a different Student just three minutes later, at 1:39p.m.

64.     On information and belief, the Attorney Defendants did not meaningfully review affidavits of service before filing them.

65.     The New York State eCourts system shows that only 9 of 211 individuals sued by Defendants in New York City Civil Courts appeared in court, meaning that that 96% did not appear.

66.     When the person who is sued fails to appear in a New York state court proceeding, a plaintiff may move for default judgment by submitting an affidavit of service and proof of the "claim, the default, and the amount due by affidavit made by the party."  N.Y. C.P.L.R. § 3215(f).

67.     Defendants filed applications for default judgment in many of the Lawsuits.

68.     On information and belief, the Attorney Defendants did not meaningfully review the facts underlying the alleged indebtedness or the proposed default judgment application and its attachments before filing applications for default judgment on behalf of Aries. Specifically, on information and belief, the Attorney Defendants did not review:

   a)  whether the statute of limitations had expired in the action;

   b)  whether there was a verifiable basis for each claim, including whether any bill or invoice had ever been sent to the Student and whether the Student had ever disputed any account charges;

   c)  whether attorneys' fees could be collected in the action; and

   d)  whether the affidavit of service was legitimate.

69.     Each application for default judgment was supported by an attorney's affirmation signed by Sharinn under penalty of perjury. On information and belief, the Attorney Defendants used a standard form to prepare these attorney's affirmations. In each affirmation, Sharinn swore that the action "is based upon non-payment of a contractual obligation" and that "[s]ervice of

11

summons and verified complaint was made . . . as appears in affidavits of service heretofore filed herein."

70.     These sworn statements made by Sharinn were false.

71.     Each application for default judgment sought $250 in attorneys' fees.

72.     Each application for default judgment attached an Affirmation of Non-Expiration of Statute of Limitations signed by one of the Attorney Defendants above a pre-printed signature line stating "Amanda Moreno/Scott C Sharinn," in which he or she affirmed under penalty of perjury that "The statute(s) of limitations for the cause(s) of action asserted herein is/are 6 years. Based on my reasonable inquiry, I believe the applicable statute(s) of limitations for the cause(s) of action asserted herein has/have not expired. The above statements are true and correct to the best of my personal knowledge."

73.     On information and belief, the Affirmations of Non-Expiration of Statute of Limitations are false. On information and belief, the Attorney Defendants did not conduct a reasonable inquiry into whether the statute of limitations had expired, and had no personal knowledge of the relevant facts necessary to make such a determination.

74.     Defendants filed applications for default judgment in many cases where the statute of limitations had expired and where it was plain on the face of the complaint and its attachments that the statute of limitations had expired.

75.     Each application for default judgment attached an Affidavit of Facts signed by Blake. On information and belief, Defendants used a standard form to prepare these affidavits. In each affidavit, Blake swore that he had personal knowledge of the facts underlying the alleged indebtedness, including the date on which an account was stated and that the Student failed to make payments when due.

12

76.     These sworn statements made by Blake were false.

77.     Defendants' applications for default judgment attached affidavits of service that Defendants knew or should have known were falsified.

78.     Defendants have obtained default judgments in some of the Lawsuits.

79.     Once a plaintiff obtains a default judgment against a person, it may enforce the judgment by, among other things, restraining and executing on the person's bank account, placing a lien on the person's property, and garnishing the person's wages. *See, e.g.*, N.Y. C.P.L.R. §§ 5201, 5222, 5231.

80.     Judgments can appear on individuals' credit reports, impairing their ability to obtain affordable credit, find housing, and to purchase homes or cars.

81.     On information and belief, the Attorney Defendants or their agents, acting on behalf of Aries, pursued settlement with the few Students who appeared in court.

82.     On information and belief, the Attorney Defendants used the amount sought in the summons, which included costs, interest, and attorneys' fees, as a bargaining chip to pressure Students into entering settlements favorable to Defendants.

83.     The Attorney Defendants entered settlements and extracted settlement payments from some Students even when the statute of limitations had expired before the Lawsuit was filed.

84.     All actions, regardless of whether they have been reduced to judgment, appear in the public court record and are available for anyone to find on the public eCourts system. Any prospective landlord or employer could find the Lawsuits by searching the Student's name on eCourts.

85.     Any person who obtains the public court file can find a vast amount of un-redacted confidential personal information regarding many Students.

86.     As a result of Defendants' illegal activities, more than two hundred New Yorkers have suffered or are at risk of suffering substantial harm, including but not limited to: monies extracted to pay settlements, garnished wages, levied bank accounts, adverse credit reporting, identity theft, time and money spent defending these baseless lawsuits, and actual and emotional damages.

## FACTS CONCERNING NAMED PLAINTIFF

87.     Plaintiff Victor Philemon is a seventy-four year old Brooklyn resident. Mr. Philemon is retired and lives on his social security and pension income.

88.     In 2010, Mr. Philemon enrolled at TCI to obtain his Associate's Degree in Heating, Ventilation, Air Condition, and Refrigeration Technology.

89.     Mr. Philemon first attended classes at TCI in the Fall 2010 semester beginning on September 12, 2010.

90.     On Wednesday January 12, 2011, the first day of the Spring 2011 semester at TCI, Mr. Philemon withdrew from the school.

91.     TCI's records show that Mr. Philemon's last day of attendance was Saturday January 22, 2011.

92.     TCI's refund provides that any student who officially withdraws in the first five days of the semester is not billed for any tuition or fees, and that any student who official withdraws in the second week of classes receives a 50% refund on tuition and fees.

93.     On at least two separate occasions, Mr. Philemon disputed his withdrawal date in writing.

14

94.    On at least one other occasion, Mr. Philemon wrote TCI to confirm that he did not owe any account balance.

95.    TCI provided a Ledger Card printout to Mr. Philemon, dated March 2, 2015, stating that Mr. Philemon's TCI account balance is $0.00.

96.    On February 15, 2017, Defendants filed a lawsuit against Mr. Philemon in New York City Civil Court, Kings County seeking $2,136.50 plus costs, attorneys' fees of $250, and 9% statutory interest. This lawsuit was captioned *Aries Capital Partners, Inc. as assignee of Technical Career Institutes, Inc. v. Victor Philemon* and assigned Index Number 003136-17/KI.

97.    The summons and complaint filed against Mr. Philemon are virtually identical to the documents filed in the other Lawsuits, described above at ¶¶ 42−55.

98.    Exhibit A attached to the complaint against Mr. Philemon is the "Assignment and Bill of Sale," described above at ¶ 56.

99.    Exhibit B attached to the complaint is a copy of Mr. Philemon's Ledger Card that was printed on March 14, 2011. This Ledger Card shows that Mr. Philemon incurred charges of $6,325.00 in tuition and fees for the Spring 2011 semester and that on January 31, 2011, his account was credited with a refund of $3,092.50.  The Ledger Card shows a total account balance of $2,621.50, but this number is crossed out by hand and handwritten next to it is "2,136.50," the amount Mr. Philemon was sued for.

100.    Mr. Philemon's StudentMaster Record is also attached to the complaint, as an unlabeled exhibit. It contains his full, un-redacted social security number, as well as a significant amount of additional personal information about Mr. Philemon, including his name, date of birth, gender, former address, three phone numbers, email address, nationality, ethnicity, citizenship

status, veteran status, and disability status. The StudentMaster record also shows his student ID

number, program of enrollment, start date at TCI, and an alleged last date of enrollment at TCI.

101.    Another document titled "Person Search Results" is attached to the complaint as

an unlabeled exhibit. This appears to be the results of an online search for a person named Cory

G. Case with an address in the Bronx. This page displays the full date of birth and last four digits

of the social security number of a person named Corey Case.

102.    On information and belief, the Attorney Defendants did not meaningfully review

the facts underlying Mr. Philemon's alleged indebtedness or the summons, complaint, and

attachments before filing the lawsuit on behalf of Aries. Specifically, on information and belief,

the Attorney Defendants did not review:

   a)  whether the statute of limitations had expired;

   b)  whether there was a verifiable basis asserting a claim against Mr. Philemon,
       including whether any bill or invoice had ever been sent to Mr. Philemon;

   c)  whether Mr. Philemon had ever disputed any account charges;

   d)  whether attorneys' fees could be collected; and

   e)  whether Mr. Philemon's confidential personal information was improperly
       disclosed in the proposed pleadings.

103.    Defendants have no legal basis to collect attorneys' fees from Mr. Philemon.

104.    The complaint states that "[a]fter a reasonable inquiry [Aries] has reason to

believe that the statute of limitations has not expired in the State of New York where the cause of

action accrued."

105.    On information and belief, this statement is false. Defendants did not conduct any

reasonable inquiry into whether the statute of limitations had expired before filing the complaint

against Mr. Philemon. The dates appearing on the Ledger Card that Defendants filed as an

attachment to the complaint show on their face that the statute of limitations had expired.

106.    On information and belief, Defendants did not have access to, and therefore never reviewed, any documents stating that TCI sent a bill or invoice to Mr. Philemon.

107.    On information and belief, Defendants knew at the time they filed the complaint against Mr. Philemon that they lacked and would lack admissible evidence sufficient to prove their only claim, for account stated.

108.    On information and belief, Defendants did not have access to, and therefore never reviewed, documents regarding whether Mr. Philemon ever disputed his account with TCI.

109.    Specifically, on information and belief, Defendants did not have access to, and therefore never reviewed, the letters Mr. Philemon sent to TCI disputing his withdrawal date, the letter he sent confirming that he did not owe any money, or the papers TCI sent him that stated his account balance was $0.00

110.    Defendants retained process server Musab Nassar in connection with the lawsuit against Mr. Philemon.

111.    Defendants never effected lawful service of the summons and complaint on Mr. Philemon.

112.    In a sworn affidavit of service, Nassar alleges that on March 10, 2017, he served a copy of the summons and complaint on "CARRIANE RICHBERG a person of suitable age and discretion at 111 JOHN STREET NEW YORK 10038 #22FL, N.Y. – defendant's/ respondent's place of business." The affidavit describes Ms. Richburg's physical appearance and then states "OTHER: CO-WORKER **CANNOT ASCERTAIN PLACE OF BUSINESS.**"

113.    The statement in the affidavit of service that 111 John Street, 22nd Floor, New York, NY 10038 is Mr. Philemon's place of business is false. Mr. Philemon has never worked at this location.

114.    The Attorney Defendants filed this affidavit of service with the court on March 24, 2017.

115.    The Attorney Defendants did not meaningfully review this affidavit of service before filing it. The affidavit of service is deficient on its face, as the process server purported to affect service at Mr. Philemon's "place of business," but also states, in all capital letters and boldface type, "**CANNOT ASCERTAIN PLACE OF BUSINESS**."

116.    Because Mr. Philemon was never served with the summons and complaint, he did not know that he had been sued by Aries and so did not file an answer.

117.    Defendants filed an application for default judgment against Mr. Philemon seeking a judgment of $3,589.31. On information and belief, this amount represents the complaint amount of $2,136.50; $205 in costs; $250 in attorneys' fees; and approximately $1000 of interest.

118.    On information and belief, the Attorney Defendants did not meaningfully review the facts underlying the alleged indebtedness or the proposed default judgment application and its attachments before filing the application for default judgment against Mr. Philemon. Specifically, on information and belief, the Attorney Defendants did not review:

    a) whether the statute of limitations had expired;

    b) whether there was a verifiable basis asserting a claim against Mr. Philemon, including whether any bill or invoice had ever been sent to Mr. Philemon;

    c) whether Mr. Philemon had ever disputed any account charges;

    d) whether attorneys' fees could be collected; and

    a) whether the affidavit of service was legitimate.

119.    On information and belief, Defendants' application for default judgment against Mr. Philemon contained an affirmation of the non-expiration of statute of limitations signed by

18

one of the Attorney Defendants, as described above at ¶¶ 72−73. On information and belief, this affirmation was false.

120.    Defendants filed the application for default judgment against Mr. Philemon even though the statute of limitations had expired.

121.    On information and belief, Defendants' application for default judgment against Mr. Philemon contained an affirmation by Sharinn and an affidavit by Matthew Blake, as described above at ¶¶ 69−70, 75−76.

122.    On information and belief, Defendants' application for default judgment attached Nassar's affidavit of service, which Defendants knew or should have known was defective on its face.

123.    On December 12, 2017, Defendants' default judgment application was rejected by the Kings County Civil Court's Judgment Clerk for the following reasons: "defective summons − consumer credit" and "attorneys fees must be awarded by the court."

124.    The case remains active. Judgment has not been entered.

125.    Mr. Philemon first learned about the state court action against him on March 8, 2018, when he was at Kings County Civil Court for an unrelated matter.

126.    Mr. Philemon already has spent time and incurred costs traveling to and meeting with his attorneys, in order to defend this baseless lawsuit. Mr. Philemon is at risk of spending additional time and incurring additional costs to defend the suit, including to meet with his attorneys and to attend future court appearances.

127.    Mr. Philemon owns a small plot of land, on which he hopes to live during retirement. He fears that if Defendants enter judgment against him, Aries could put a lien on this property.

## CLASS ACTION ALLEGATIONS

128.   Plaintiff brings this action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the

Federal Rules of Civil Procedure, on behalf of himself and as representative of a class consisting

of:

> All individuals who have been sued in New York City Civil Court by Aries
> Capital Partners Inc., represented by Scott Sharinn and/or Amanda Moreno, to
> collect money allegedly owed in connection with the individual's attendance at
> the Technical Career Institutes.

129.   The class is so numerous that joinder of all class members in this action would be

impracticable.

130.   New York State's eCourts system shows that in 2017, Aries filed 211 cases in the

New York City Civil Courts as assignee of TCI. The precise number and identity of the class

members is contained within Defendants' business and litigation records.

131.   Defendants have acted and continue to act on grounds generally applicable to

each member of the plaintiff class, thereby making appropriate final declaratory and injunctive

relief with respect to the class as a whole.

132.   Class members present common questions of law and fact and these questions

predominate over any individual questions.

133.   The common questions of law include, but are not limited to, whether

Defendants' litigation practices violate the FDCPA and the New York Judiciary Law.

134.   The common questions of fact include, but are not limited to: whether Defendants

filed the Lawsuits after the statute of limitations had expired; whether Defendants filed and

maintained the Lawsuits against Plaintiffs without undertaking a meaningful review of each

claim; whether Defendants filed the Lawsuits against Plaintiffs without any verifiable basis for

each claim and without the ability or intent to obtain the documentation necessary to prove each

claim; whether Defendants sought unauthorized attorneys' fees; whether Defendants hired

process servers they knew would not serve Plaintiffs and filed affidavits of service they knew or

should have known were falsified; and whether Defendants publicly disclosed Plaintiffs'

confidential personal information.

135.    The claims of the named Plaintiff are typical of the claims of the class.

Defendants sued the named Plaintiff seeking to collect on money due from Plaintiff's attendance

at TCI and acted in the same manner applicable to the class as a whole, including: preparing and

filing nearly identical form summonses and complaints; preparing and filing nearly identical

form applications for default judgment and accompanying affidavits and affirmation; retaining

process servers to engage in sewer service, and filing false affidavits of service.

136.    The Named Plaintiff will adequately and fairly protect the interests of all

members of the proposed class because he has the requisite personal interest in the outcome of

this litigation and has no interest antagonistic to any member of the proposed class.

137.    The Named Plaintiff is represented by the New York Legal Assistance Group

("NYLAG"). Attorneys at NYLAG are experienced in complex federal litigation, class action

litigation, and consumer defense litigation.

138.    A class action is the superior method for a fair and efficient adjudication of this

matter in that Defendants have acted in a manner generally applicable to the class and a class

action will avoid numerous separate actions by class members that would unduly burden the

courts and create the possibility of inconsistent decisions, thereby making final injunctive and

declaratory relief appropriate as to the class as a whole.

139.    Moreover, it would be impracticable for potential plaintiffs, who are, on

information and belief, primarily low-income individuals with limited access to counsel, to

obtain legal services on an individual basis for their claims. Hence their rights under the law may well be meaningless without certification of a class action seeking common redress.

### FIRST CAUSE OF ACTION
Violation of the FDCPA, 15 U.S.C. §§ 1692e, 1692f
Against All Defendants

140.    The FDCPA, 15 U.S.C. § 1692e, prohibits a "debt collector" from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

141.    The FDCPA, 15 U.S.C. § 1692f, prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt."

142.    Defendants violated the FDCPA, §§ 1692e and 1692f, by making false, deceptive, and misleading representations and engaging in unfair and unconscionable practices. Defendants' violations include, but are not limited to:

   a.   Commencing and litigating the Lawsuits against Plaintiffs after the statute of limitations expired and falsely representing that Defendants had conducted a reasonable inquiry to determine that the statute of limitations had not expired;

   b.   Commencing and litigating the Lawsuits against Plaintiffs without undertaking a meaningful review of the claim asserted and documents filed;

   c.   Commencing the Lawsuits against Plaintiffs without a verifiable basis for each claim and without the ability or intent to obtain the documentation necessary to prove each claim;

   d.   Seeking unauthorized attorneys' fees; and

   e.   Filing or causing to be filed false affidavits of service.

143.    As a direct and proximate result of Defendant's violations, Plaintiff and putative class members are entitled to actual and statutory damages, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**
Violation of N.Y. Jud. Law § 487
Against the Attorney Defendants

144.    The New York Judiciary Law § 487 states that "[a]n attorney or counselor

who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent

to deceive the court or any party . . . forfeits to the party injured treble damages, to be recovered

in a civil action."

145.    The Attorney Defendants violated New York Judiciary Law § 487 by engaging in

deceit or collusion, or consenting to deceit or collusion, with the intent to deceive courts and

opposing parties.

146.    Defendants' violations include, but are not limited to:

    a.    Commencing the Lawsuits against Plaintiffs after the statute of limitations expired
        and falsely representing that Defendants had conducted a reasonable inquiry to
        determine that the statute of limitations had not expired;

    b.    Commencing and litigating the Lawsuits against Plaintiffs without undertaking a
        meaningful review of the claim asserted and documents filed;

    c.    Commencing the Lawsuits against Plaintiffs without a verifiable basis for each
        claim and without the ability or intent to obtain the documentation necessary to
        prove each claim;

    d.    Seeking unauthorized attorneys' fees;

    e.    Filing or causing to be filed false affidavits of service; and

    f.    Disclosing Plaintiffs' confidential personal information in public court files.

147.    Defendants' conduct constitutes a chronic pattern of extreme and egregious

deceit.

148.    Defendants committed the above-described acts willfully and/or knowingly.

149.    Defendants' wrongful and deceptive acts have caused injury and damages to

Plaintiff and putative class members and unless enjoined, will cause further irreparable injury.

150.     As a direct and proximate result of these violations of New York Judiciary Law § 487, Plaintiff and putative class members have suffered compensable harm and are entitled to recover actual and treble damages.


WHEREFORE, Plaintiff requests that this Court enter judgment jointly and severally as against all Defendants:

a.   Certifying this case as a class action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, with a class defined as:

   All individuals who have been sued in New York City Civil Court by Aries Capital Partners Inc., represented by Scott Sharinn and/or Amanda Moreno, to collect money allegedly owed in connection with the individual's attendance at the Technical Career Institutes.

b.   Declaring that Defendants have committed the violations of law alleged in this action;

c.   Enjoining and directing all Defendants to cease engaging in debt collection practices that violate the FDCPA and New York Jud. Law § 487;

d.   Awarding to Plaintiffs:

   i.   actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

   ii.   statutory damages pursuant to the FDCPA;

   iii.   treble damages pursuant to N.Y. Jud. Law § 487 against the Attorney Defendants;

   v.   disbursements, costs, and attorneys' fees pursuant to the FDCPA; and

e.   Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: March 29, 2018
       New York, New York

Respectfully submitted,

/s/ *Danielle Tarantolo*

Danielle Tarantolo
Jane Greengold Stevens
Shanna Tallarico
Jessica Ranucci
NEW YORK LEGAL ASSISTANCE GROUP
7 Hanover Square
New York, NY 10004
(212) 613-5000
dtarantolo@nylag.org

*Counsel for Plaintiff*